57   333
123   518
57   333
40a 581
57   333
86a 554

HENRY W. THOMSON

*v.*

BUCKNER S. MORRIS *et al.*

1. VOID AND VOIDABLE—*of a decree pro confesso, upon insufficient allegations.* If a person is in court by due service, as party to a bill praying a sale of lands in payment of certain judgments, on the ground that the lands

belonged to the judgment debtor, and the bill shows upon its face that such defendant claimed an interest which the complainant seeks to subject to sale because of its inferior equity, and was made a party that he might disclose his interest, but, neglecting to interpose any defense, a decree *pro confesso* is entered against him, such decree, however erroneous because the allegations in the bill as to the title of the defendant were not positive or specific, or because the bill failed to show the complainant did not have an adequate remedy at law, is not void, and a sale under its authority is not a nullity.

2. In such case, when the decree is collaterally assailed, it is sufficient to know that the defendants were in court by service or appearance, that the decree was one which a court of equity has power to make, and that the subject matter upon which it operated was brought by the bill before the court for adjudication.

3. So upon bill filed by a judgment creditor, to subject certain lands to sale for the satisfaction of the judgment, a third person, who had purchased a portion of the lands under another judgment against the same debtor, was made a party defendant. The only distinct allegation in the bill affecting the title of that defendant was, that at the time the complainant obtained his judgment, and at the close of the term when it was rendered, the judgment debtor owned the lands. The bill, however, charged that the defendant claimed some right or title to a part of the lands, in some way through the judgment debtor, and that he knew of complainant's superior equity in the lands when he acquired his interest therein, and asked that he might set forth what title or claim he had. The defendant was duly served with process, but, failing to make any defense, a decree *pro confesso* was entered and the lands sold thereunder. Upon bill subsequently filed by such defendant, to set aside the title thus acquired, as a cloud upon his title, upon the alleged ground that as there was no specific allegation in the bill in the former suit to the effect that the title claimed by him was for any reason subject to that judgment, the default admitted nothing to his prejudice, and the decree was void for the reason his title was not before the court for adjudication, it was *held*, that however erroneous that decree may have been for want of sufficient allegations in the bill, it was not void. The bill brought the question of the sale of the lands before the court for adjudication, and the subject was one of ordinary chancery cognizance,—so there was no want of jurisdiction in the court over the subject matter.

APPEAL from the Superior Court of Chicago.

Mr. THOMAS S. McCLELLAND, and Messrs. ROSENTHAL & PENCE, for the appellant.

Mr. JAMES R. DOOLITTLE and Mr. R. H. FORRESTER, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

In July, 1844, Hubbard and Davis filed their bill in chancery against Egan, Blanchard and others, for the purpose of subjecting certain lands therein described to the payment of certain judgments obtained by Hubbard and Davis against Egan in the Municipal Court of Chicago. A large quantity of lands was described in said bill, and there were numerous defendants, besides Blanchard, who were distinctly charged with holding fraudulent titles under Egan. Blanchard, at that time, claimed title to a part of the lands described in the bill by virtue of a sale under a judgment against Egan in favor of one Church, rendered in 1837, at the same term of the same court at which Hubbard and Davis obtained their judgments. At this sale Blanchard, who was the assignee of the judgment, became the purchaser, and in 1840 received a sheriff's deed. Subsequently he conveyed to Thomson, the complainant in this case. The only distinct allegation in the above mentioned bill of Hubbard and Davis affecting the title of Blanchard, who had not then conveyed to Thomson, was, that at the time when Hubbard and Davis obtained their judgments against Egan, and at the close of the term when said judgments were obtained, Egan was the owner of the lands described in their bill, which included the land bought by Blanchard. The bill, however, charges that Blanchard claims some right or title to a part of said lands in some way through Egan, and that he knew of complainant's superior equity in said lands when he acquired his interest therein, and asks that he may set forth what title or claim he has. Blanchard did not answer the bill, and it was taken *pro confesso* as to him. In 1846 the court pronounced a decree ordering a sale of the lands to pay the Hubbard and Davis judgments. Under this

decree the lands were sold in 1847, and the sale and deed having been subsequently reported to the court, they were approved, and a final order was pronounced confirming title in the purchasers, and decreeing that the deed of the commissioner be considered as a conveyance of the rights and interests of the defendants and each of them in the premises. This title has passed to the defendants in this proceeding, and the bill in this case was filed to set it aside as a cloud upon the title of complainant claiming under Blanchard, and being in possession. The superior court decreed in favor of the defendants and dismissed the bill. The complainant appealed.

It is urged by counsel for appellant that the decree *pro confesso* in the former suit, only established against him the allegations of the bill, and as there was no specific allegation to the effect that the title claimed by Blanchard was, for any reason, subject to the judgments in favor of Hubbard and Davis against Egan, the default of Blanchard admitted nothing to his prejudice, and the court had no right to decree the sale of whatever title he might have. It is insisted, in other words, that the bill did not bring Blanchard's title before the court for adjudication, and that in attempting to adjudicate upon it, the court was exceeding its jurisdiction as to the subject matter, and its decree was void. On the first argument of this case we adopted this view, but a rehearing having been awarded, we have given the case further consideration, and are satisfied our first opinion was erroneous.

The difficulty in the reasoning of appellant's counsel is, that they confound, and are obliged to confound, for the purposes of their argument, the difference between a decree merely erroneous and one void for want of jurisdiction. It may be conceded, for the purposes of this case, that the court should not, on the allegations in the bill of Hubbard and Davis, have decreed the sale of Blanchard's title, though he was in default. It may be conceded that Blanchard might, in proper time, have brought that decree to this court and have

had it reversed. But, nevertheless, it was not, as to Blanch-
ard's title, a void decree. The court had jurisdiction over
him by due service of process, and the subject matter of the
bill was one of ordinary chancery cognizance. The bill was
filed to subject certain lands situate in the county where the
court was held to the payment of certain judgments. Blanch-
ard was in court by service, the land was under the jurisdiction
of the court, the bill brought the question of its sale before
the court for adjudication, and the decree which the court was
asked to make, and did made, in regard to it, was but an
exercise of the plainest of chancery powers. The power may
have been improperly exercised. Neither the bill nor the
proof may have justified the decree. Nevertheless, the naked
power or jurisdiction to make it can not be denied. The bill
alleged that the complainants had obtained certain judgments
against Egan, that the lands in question belonged to him at
the date of the judgments and at the expiration of the term
when they were rendered. This allegation showed that the
judgments had been a lien on the lands, and unless it should
be made to appear that this lien was subject to some other
paramount lien or equity, the land ought to be sold for their
payment. Blanchard might have demurred to the bill on the
ground that, so far as it related to him, there was no necessity
shown by it for coming into a court of chancery. It disclosed no
reason why the complainants had not sold under execution, since
it did not allege such a title or claim of title in Blanchard as
would have interfered with such sale, or have clouded the title
of the purchaser. It did not even allege, in general terms,
that Blanchard claimed a paramount title. He might, there-
fore, have demurred, and asked that, as to him, the bill be
dismissed. Or he might have answered and have shown his
superior equity in the lands, if he had any. One of these two
things he was bound to do, if he desired to protect his title.
Not doing either, the court had the power to order the sale of
the land, including his interest therein, although it would
probably have declined to do so, if he had shown, by a demurrer,

that there was ample remedy at law for the complainants, so far as concerned him.

Deficient as the bill may have been in allegations showing the necessity of bringing Blanchard into court, the purpose for which he was brought there was nevertheless apparent. The bill alleged that he claimed an interest in the lands, but that he had notice, when he acquired it, of complainant's superior equity. He was thus informed that the bill sought, not only to have the lands sold, but also to have his interest in them sold, unless he should show, by his answer, that he had such an interest as would make their sale unjust. The allegations of the bill were thus sufficient to bring before the court the subject matter upon which it decreed, to wit: the sale of the lands in payment of the complainants' judgments.

Counsel for appellant cite numerous authorities for the purpose of showing that the decree was not an estoppel, so far as concerns the question whether the equity of Davis and Hubbard was superior to the title of Blanchard, because that question was not distinctly put in issue by the pleadings. But our decision is not based upon any ground of estoppel. The authorities cited relate to cases in which the attempt has been made to conclude the parties to a suit as to some matter of fact, upon the ground that the fact has been determined in some former litigation between the same parties. We may concede that, in any suit which may arise, Blanchard should not be estopped from proving, as a matter of fact, that he had, when that decree was rendered, the superior instead of the inferior equity. His grantee may prove it in this case, but the difficulty is, it avails nothing when it is proved, because his title, whether superior or inferior, was sold under the decree. The question is not one of estoppel as to any facts found by the decree, but simply as to the effect of a sale ordered by the decree to be made. This question brings us back to the starting point—the naked question of jurisdiction over the person and the subject matter. On that we can come to but one conclusion.

The question is really not an open one in this court.   In
*Finch* v. *Martin,* 19 Ill. 111, several persons were made defend-
ants, with the general averment that "they claim or pretend
to have some title or interest in the premises, which is fraudu-
lent and void." There was a demurrer to the bill, and this
court held that the allegation was sufficient, saying the defend-
ants were bound to disclose their title, if they had any, and if
they had none, they should disclaim.   Prior to that decision,
it had been the common practice, in bills filed for the purpose
of having land sold, to make persons defendants, by a general
allegation of this character, and ask that they be required to
disclose their titles.   This was constantly done in bills to fore-
close mortgages and bills to subject lands to the payment of
judgments, for the purpose of clearing the title and cutting
off rights of redemption.   This case in 19th Ill. approved the
practice, and it has now become a rule of property, under that
decision, which it would be very wrong to shake.   In that case
the court held such a general allegation was good upon demur-
rer.   In the bill filed by Hubbard and Davis, the positive
allegation that the claim set up by Blanchard was "fraudulent
and void" was not made, as it was in the case in 19th Ill. and
in this opinion we have been disposed to concede that that bill
was demurrable, on the ground that the inferiority of Blanch-
ard's title to the equity of the complainants was only
argumentatively shown, and it did not appear, as against
Blanchard, why the complainants' remedy was not complete at
law.   But the case in 19th Ill. is directly in point, as show-
ing that where a party is brought into court for the purpose of
permitting him to set up his title to real estate in which com-
plainants claim an equity, he must appear and defend, if he
has interests which he desires to protect.   If the allegations
of the bill are defective, or the relief asked can be had at law,
he may, of course, demur; but if he fail to appear at all, and
the court decrees the sale of his land, he can not be permitted
to say the decree was void merely because the allegations as to
his title were not positive or specific.   When the decree is

collaterally assailed, it is sufficient to know that the defendants were in court by service or appearance; that the decree was one which a court of equity has power to make, and that the subject matter upon which it operated was brought by the bill before the court for adjudication.

If in court by due service, as party to a bill praying a sale of lands in payment of certain judgments, on the ground that the lands belonged to the judgment debtor, and if the bill showed upon its face that he claimed an interest which the complainant sought to subject to sale because of its inferior equity, and was made a party that he might disclose his interest, then the decree, however erroneous, is not void, and a sale under its authority is not a nullity.

The decree of the superior court dismissing the bill must be affirmed.

*Decree affirmed.*