## CARRIE E. DYER *et al.*

### *v.*

## MYRON HOPKINS *et al.*

*Filed at Ottawa November 17, 1884—Rehearing denied March Term, 1885.*

1. DECREE—*how far conclusive in another suit—as to defences not interposed at the proper time.* Adult defendants who have been duly served with process in a suit to foreclose a mortgage, and make no defences, but suffer the mortgaged premises to be sold and the time for redemption to pass, will be precluded by the decree in such case from afterward defeating the title derived under it by alleging the defences of usury and payment of the mortgage debt in a subsequent suit, unless they were prevented from defending by the complainant in the foreclosure suit. It is not enough that some other person induced them to make no defence.

2. WITNESS—*competency—against executor or devisees.* A person having an undivided interest in fee in a tract of land, and also an estate of homestead therein, on a bill filed by him to set aside an adverse title against parties defending as executors and devisees, is not a competent witness to testify to statements and declarations of the testator in his lifetime, for the purpose of impeaching the title acquired by him to the land. Nor will he be rendered competent by any release or transfer of his interest made for that purpose, only.

3. ERROR WILL NOT ALWAYS REVERSE—*as to decree not really affecting rights of parties.* On a bill by heirs of a deceased mortgagor to set aside a foreclosure sale as having been made under a decree obtained by fraud, the devisees of the mortgagee and purchaser filed a cross-bill, under which a transfer of the defendant in the foreclosure suit to a third person, and a conveyance by the latter to such defendant's wife, was set aside and the original bill dismissed: *Held,* if there was error in setting aside the deed under the cross-bill, it could work no injury, as the title of the mortgagor was divested by the foreclosure sale.

APPEAL from the Circuit Court of Kendall county; the Hon. CLARK W. UPTON, Judge, presiding.

On the 14th of May, 1879, Emily J. Dyer, Franklin E. Dyer, her husband, William Pollock, Caroline Knight, and Carrie E. Dyer, filed their bill in chancery in the office of the clerk of the circuit court of Kendall county, against John A. Knight, Thomas Atherton, Myron Hopkins, and William H.

Hopkins, executors, etc., and on the 16th of December, 1880, they filed, in the same office, their amendment to said bill. As amended, it is, among other things, alleged in the bill, that one C. J. Dyer, being the owner of a tract of thirty-seven and three-quarters acres of land in Kendall county, therein particularly described, conveyed the undivided half thereof, subject to the mortgage hereinafter mentioned, to John A. Knight, and by subsequent conveyances this interest has been conveyed to his wife, Caroline Knight; that on the 15th of January, 1863, Dyer mortgaged this tract of land to Robert Hopkins, to secure the payment of a promissory note of that date, payable four years thereafter, for $1260, with interest at the rate of ten per cent per annum,—which note is usurious, a considerable part thereof being for interest upon money loaned, computed at the rate of twenty-five per cent per annum; that Dyer and his wife, together with said Caroline and John A. Knight, occupied said tract as a homestead until the death of said Dyer and his wife, (both of whom are long since deceased,) and have been so occupied by said Knight and wife since; that said Dyer, in his lifetime, made various payments upon said note, amounting, in the aggregate, to the sum of $800, and after his death said John A. Knight, with money equitably belonging to complainants, in the proportion of their respective interests as heirs at law of said Dyer, paid to said Robert Hopkins the balance that was due upon said note and mortgage, and fully satisfied the same, but, notwithstanding their satisfaction, said Hopkins, conspiring with said John A. Knight to cheat and defraud complainants, falsely and fraudulently represented and proposed that, inasmuch as said Dyer and wife were both dead, it would be better and cheaper for complainants, and would give a better title to said land, for him to file a bill in the Kendall circuit court to foreclose the said mortgage, and that, on a decree being rendered for foreclosure and sale, said land could be sold at master's sale, and thereby a perfect title could be obtained,

and said John A. Knight could bid in said tract, and convey to each of the complainants his or her respective interest in the same; that the complainants then, having perfect confidence in the honesty and integrity of Hopkins and Knight, and believing said statements, assented to his proposals, and said Hopkins thereupon, in pursuance of such conspiracy, on or about the 28th of December, 1874, filed his bill in the circuit court of Kendall county, against the complainants, and the defendant John A. Knight, and others, to foreclose the said mortgage; that the complainants were served with process, but relying on the agreement aforesaid, with said Hopkins, and his honesty and good faith in the premises, etc., did not appear and put in their several answers to the bill, and afterwards, on the 9th of January, 1875, at the January term, 1875, of the court, the defendants to said bill were defaulted, and said bill was taken for confessed as against them and each of them; that the amount due upon the mortgage was found to be $2772.35, and it was decreed the mortgaged land be sold for the payment of the same, with interest from the date of the decree, and that in case of failure to redeem, deed be given to the holder of the certificate of purchase; that after such decree was rendered, the master in chancery, on the 17th of April, 1875, sold said premises to said Hopkins, for $2886, and gave him a certificate of purchase; that complainants, relying upon the promise of Hopkins, and believing that he and Knight would perform all that Hopkins had represented to the complainants should be done, permitted Hopkins to take such certificate of purchase, as they had previously permitted him to take the decree in said cause, in his own name, without asserting their rights in the premises, on the full understanding and agreement with Knight and Hopkins that on the payment of the costs of the said cause to the clerk of the court, by John A. Knight, or by furnishing the same to Hopkins so that he could pay the same, he, Hopkins, would assign the certificate of purchase to said

Knight, and Knight could take the deed to said premises, and could then carry out the agreement with the complainants in regard to the proper division of the tract among them; that Knight, pursuant to said agreement, paid to L. G. Bennett, clerk of said court, all the costs in the cause, and paid to said Hopkins all the money that was required to pay said master his commissions and all other costs attending the sale, but that, after the payment of said costs, said Hopkins and Knight neglected, from time to time, to have said certificate of purchase assigned to Knight, but stated to the complainants that they were willing to do so at any time,—that it was all right, and when the master in chancery made the deed on the sale, it should be executed to said John A. Knight; that said Caroline Knight, and John A. Knight, her husband, have continued in the sole and peaceable occupation of said tract since said sale and the making of said certificate to said Hopkins. It is then charged that said John A. Knight, in violation of said agreement and in fraud of the rights of the complainants in the premises, wholly neglected to procure the assignment of said certificate from Hopkins, and wholly neglected to obtain a deed from the master in chancery to said tract, but that said Hopkins, in violation of his said agreement with the complainants and said Knight, and in fraud of their rights, obtained a deed to himself on the said master's certificate, but concealed knowledge thereof from the complainants; that said Hopkins died testate about June 1, 1878, and his executors and legatees are made defendants. It is further alleged, that said executors have commenced a suit of forcible entry and detainer, against said Caroline Knight, and her husband, John A. Knight, and are attempting to recover possession of said tract under said master's deed to Hopkins, which suit was then pending on the common law side of the circuit court of Kendall county. The prayer is, that the master's deed to Hopkins be cancelled and declared for naught, that the master in chancery be directed to

execute a deed to said John A. Knight, and that said Knight be decreed to convey to complainants their respective interests in the estate, etc.

The adult defendants, except John A. Knight, put in answers denying the material allegations of the bill, and the minor defendants answered by guardian *ad litem,* also putting in issue the material allegations of the bill. The executors and legatees of said Robert Hopkins, deceased, thereupon filed their cross-bill in said cause, in which, after reciting the prior pleadings, they allege an agreement between the executors and said John A. Knight, whereby it was agreed that said Knight should sell and convey to said executors an island in Fox river, containing about ten acres, and surrender possession of said tract so sold on foreclosure, etc., as aforesaid, and conveyed to said Robert Hopkins by the master in chancery, within a month or so, and said executors should pay him for said island $200, and dismiss said suit of forcible entry and detainer; that shortly after making such agreement, said executors took possession of the said premises, except the house and barn, and held the same for several days, but afterwards John A. Knight evicted them therefrom; that they are ready and willing to pay the $200 and dismiss the forcible entry and detainer suit, etc. It is also alleged therein, that said John A. Knight made a conveyance of an undivided half of said tract to said Caroline Knight, through one George Meredith; that such conveyances are clouds upon the title of complainants. The prayer is, that the agreement between said executors and said John A. Knight be decreed to be specifically performed, and that the deed from John A. Knight and wife to Meredith, and from Meredith to Caroline Knight, be cancelled and set aside, etc. The defendants to the cross-bill answered, denying its material allegations.

Replications were filed to the several answers, and the cause was heard on bill, and amended and supplemental bills, and answers, and cross-bill and answers, and evidence intro-

duced. The court decreed that the bill, and amended and supplemental bills, be dismissed, and that the deeds of John A. Knight and wife to Meredith, and of Meredith to Caroline Knight, be cancelled and set aside. This appeal is prosecuted from that decree, and numerous errors, raising the questions discussed in the opinion, are assigned.

Mr. Chas. Wheaton, Mr. A. J. Hopkins, Mr. N. J. Aldrich, and Mr. F. H. Thatcher, for the appellants, contended, from the evidence, that the decree below should be reversed, and made the following points of law:

Where a witness does not testify on his own motion or in his own behalf, he is competent. *Remann* v. *Buckmaster*, 85 Ill. 403; *Funk* v. *Eggleston*, 92 id. 515; *Caprez* v. *Trover*, 96 id. 456.

Husbands are competent witnesses for their wives in all matters pertaining to the separate estate of the wife. *Funk* v. *Eggleston*, 92 Ill. 515.

Neither W. H. Hopkins nor any of the defendants, except Knight, were competent witnesses in this case for the defendants. They all come within the provisions of section 2, of chapter 51, of the Revised Statutes, on "Evidence and Depositions." The complainants sue as heirs of C. J. Dyer, deceased, and all the defendants who have been sworn in this case are parties to the record, and are interested, and are called on their own behalf and on their own motion. They are incompetent. *Stone* v. *Cook*, 79 Ill. 424; *Langley* v. *Dodsworth*, 81 id. 86; *Pyle* v. *Oustatt*, 92 id. 209.

Mr. A. C. Little, and Mr. R. P. Goodwin, for the appellees, after a full discussion of the evidence, made the following points of law:

The second section of the act of 1867, making parties witnesses, with certain exceptions, contemplates that both the parties shall be living, and have an opportunity to testify.

*Boynton* v. *Phelps,* 52 Ill. 219; *Langley* v. *Dodsworth,* 81 id. 86; *Merrill* v. *Atkin,* 59 id. 20.

Knight was incompetent as a general witness for complainants. *Marshall* v. *Peck,* 91 Ill. 187; *Pyle* v. *Oustatt,* 92 id. 209; *Corderey* v. *Hughes,* 6 Bradw. 401; *McCann* v. *Atherton,* 106 Ill. 31; *Wagenseller* v. *Prettyman,* 12 Bradw. 341; *Crane* v. *Crane,* 81 Ill. 165.

None of the executors testified as to any transactions except as to such as have occurred since the death of C. J. Dyer. As to such transactions they are competent witnesses. *Holloway* v. *Galloway,* 51 Ill. 159; *Funk* v. *Eggleston,* 92 id. 515; *Stone* v. *Cook,* 79 id. 424.

But as a matter of law, the complainants do not, in the sense of the statute, sue as the heirs of C. J. Dyer. This bill is filed to set aside a decree against them personally, because of frauds which they allege were practiced upon them since Dyer's death, and since their interest became vested. The distinction is a material one, and once seen determines the question.

Mr. CHIEF JUSTICE SCHOLFIELD delivered the opinion of the Court:

It is specifically alleged in the bill that all who are complainants in the present suit were made defendants to the bill to foreclose, and were properly summoned, as such, and before the court when the decree of foreclosure was rendered. They then had an opportunity to set up the defences of usury and payment, and unless they were prevented from doing so by the complainant in that suit, (Robert Hopkins,) they are now estopped from urging such grounds for relief. (*Thomson* v. *Morris et al.* 57 Ill. 333; *Clubb et al.* v. *Wise,* 64 id. 157.) But the bill alleges that "said Hopkins, conspiring with said John A. Knight to cheat and defraud complainants, represented that, inasmuch as said Dyer and wife were both dead, it would be better and cheaper for complainants, and would

give a better title to said land, for him to file a bill in the Kendall circuit court to foreclose the said mortgage, and that on a decree being rendered for foreclosure and sale, said land could be sold at master's sale, and thereby a perfect title could be obtained, and said John A. Knight could bid in said tract, and convey to each of complainants his or her respective interest in the same; that the complainants, having perfect confidence in the honesty and integrity of Hopkins and Knight, and believing said statements, assented to his proposals," etc.; and further, that they, "relying on the agreement aforesaid, with said Hopkins, and his honesty and good faith in the premises, etc., did not appear and put in their several answers to the bill," etc. It became, therefore, necessary, upon the trial, to satisfactorily prove these allegations. If they were not proved, the excuse for not putting in answers to the bill to foreclose has failed, and the complainants are bound by the decree of foreclosure as to all matters of defence occurring anterior to the time at which it was rendered.

We have been unable to find sufficient competent evidence to sustain these allegations. John A. Knight, who, as we shall hereafter show, was incompetent to prove any agreement with or declarations of Robert Hopkins, is the only person whose evidence pretends to detail an agreement with said Hopkins in regard to the foreclosure and sale thereunder, but it shows no agreement with the complainants. It shows, on the contrary, distinctly, if anything, an agreement between Hopkins and the witness alone, whereby there was to be a foreclosure and sale thereunder, to enable the witness to cut off and defeat all rights of the complainants in the mortgaged property. On his first examination he said, as his evidence is abstracted by the complainants' counsel: "After these payments were made, the way the mortgage came to be foreclosed, was this: My sister-in-law, Emily Dyer, was up here. I told the doctor [*i. e.,* Hopkins] so, and asked him to come down. He did so, and she wanted to know what I would give

her to sign off her right in the place. I told her, $100, and no more. At the train, when she went away, I offered her $100 if she would sign the release to that place. She would not take it, but offered to take $800. I told her the doctor proposed to administer on that estate of C. J. Dyer. I saw the doctor, and had a talk with him. He said I could sell the place at a mortgage sale, and it would not cost as much as it would to administer on the estate. We sat down on a pile of lumber near the depot, and talked this matter over. I agreed to have it sold at a mortgage sale,—that is, sell the place in controversy where I live. He said it would not cost over $20 to do it, and that he would get me a good title. He said she didn't have anything or any interest in the place; that she had never done anything to have any interest there; that my wife, Caroline Knight, had always taken care of the old folks. This was before filing the bill. We talked about the amount due, and he said he had to go a good deal by memory, and he said he would sell it and give me a good title. We didn't make any defence, for it was for my especial benefit. This was the day that Emily Dyer went home, and the foreclosure was to get the title of the place in me,—that was the reason the bill was filed. Emily Dyer is a sister of my wife. She and her husband were living in Logan county. There was talk of taking out letters of administration on the estate. The doctor said it would be cheaper to foreclose the mortgage, and he would sell it at a mortgage sale, so I would get a deed for it and shut her out." On a subsequent examination the same person testified, on cross-examination: "At the time the summons was served, my wife knew all about it, and that the mortgage was paid, and I told her that she need not look after it, but that I would. I told her that it was all right. I had no idea that the mortgage was being foreclosed for the doctor to get any money out of me. Neither had my wife. If we had thought of such a thing we would have put in a defence to the mortgage. The reason

we did not put in a defence to the mortgage, was because of the arrangement with Dr. Hopkins."

But when Knight was first examined, he was the owner in fee, subject to the mortgage, of an undivided half of the mortgaged property. When he was next examined he had conveyed, by quitclaim, to Meredith, and Meredith, by the same kind of conveyance, had conveyed this undivided half to Knight's wife. It is shown, however, that this property constituted, and was occupied by Knight and wife as, a homestead, before the conveyance and since, and up to the time of giving his evidence. He, then, must have had, when last examined, an estate of homestead in the property, or at least in an undivided interest therein. The statute allowing parties in interest to testify, makes the exception that "no party to any civil action, suit or proceeding, or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf, by virtue of the foregoing section, when any adverse person sues or defends, * * * as the executor ، * * * or legatee or devisee of any deceased person." (Rev. Stat. 1874, p. 488, sec. 2.) Indeed, the conveyances from Knight to Meredith, and from Meredith to Knight's wife, seem, and were so found by the court, purely colorable, and were, doubtless, made as releases of his interest merely for the purpose of rendering him competent as a witness. If this was the purpose of their execution, they could not have the intended effect, for it is provided by the seventh section of the statute relating to evidence and depositions, (Rev. Stat. 1874, p. 490,) that "in any civil action, suit or proceeding, no person who would, if a party thereto, be incompetent to testify therein under the provisions of section 2 or section 3, shall become competent by reason of any assignment or release of his claim made for the purpose of allowing such person to testify." In either view, however, Knight was not competent to testify to transactions occurring with and declarations of Hopkins in his lifetime.

The opposite parties defend as executors and legatees of a deceased person, and he is himself directly interested in the event of the suit, and testifies in favor of that interest. *McCann* v. *Atherton et al.* 106 Ill. 31; *Plain* v. *Roth et al.* 107 id. 588.

Divesting the case of the evidence of John A. Knight, the only evidence that we can find in the abstract upon the question under consideration is as follows: George Ernst testified, speaking of the foreclosure and sale: "I had a conversation with Dr. Hopkins about the matter. I was crossing the river one morning with him. I said, 'Doctor, you are not going to sell that place of John's, are you?' He said, 'I have got to, in order to get him a good title.'" C. J. Dyer, a nephew of the deceased C. J. Dyer, speaking of the foreclosure and sale, testified: "I met Hopkins, and asked him if he was going to sell them out, and what for. He said the sale would get Knight a better title, on account of Franklin E. or Emily J. Dyer,—that the sale would help John's title."

If, anywhere in this record, there is evidence of a contract between Hopkins and these complainants in regard to this foreclosure and sale, or of an act done or word said to them by him to induce them to not appear and defend against the foreclosure, we have been unable to find it. Conceding, for argument's sake, only, that as to Knight there is such proof, Knight is not complainant here, and he therefore neither seeks nor is entitled to affirmative relief under the pleadings. Nothing is shown to have been done or said, even by him, to induce the complainants not to appear and defend against the foreclosure suit; and it can not be claimed he was acting as their agent, for the evidence quite as clearly shows, as it shows anything, that he was intending by the sale to cut off their rights and obtain for himself the entire title. The complainants have had their day in court, and having neglected to interpose their defence against the mortgage then, they

can not now be allowed to urge the same matters as grounds for affirmative relief.

We are unable to say the decree on the cross-bill is not authorized by the evidence; but whether so, or not, if we are right in what we have said as to the relief sought under the original and supplemental and amended bills, these complain-ants are not prejudiced thereby. That decree takes nothing from them to which they would otherwise be entitled.

The decree is affirmed.

*Decree affirmed.*

Subsequently, upon an application for a rehearing, the fol-lowing additional opinion was filed:

Per CURIAM: We have considered the several reasons as-signed for a rehearing in the petition, and still remain of the opinion heretofore announced.

If it shall be conceded to be proved, as is in the petition suggested, that John A. Knight, with the knowledge and ap-proval of his wife, Catharine, and as her agent, as well as for himself, entered into a contract with Hopkins, whereby to have the title to the property in controversy so vested in himself as to cut off the title of the heirs at law of Dyer, it may be answered, first, that is not the case made by the bill, and so a decree, as prayed by the bill, can not be rendered thereon; and secondly, such an agreement is iniquitous and fraudulent as to the heirs at law of Dyer, and so is insus-ceptible of enforcement in a court of equity. If, also, we shall concede that as to Carrie E. Dyer and the other heirs at law of Dyer, Knight was, as is in the petition contended, a competent witness, it is sufficient to answer, as is shown in the foregoing opinion, that his evidence does not prove, as to them, the allegations of the bill. But the rule of chancery practice whereby parties were allowed to testify, was limited to cases where their evidence could not be used in their own favor. (*Bragg* v. *Geddes*, 93 Ill. 39.) Here, the interests of

the parties, on the case made by the bill, are so interwoven and inseparable that it is difficult to conceive how effect could be given to the evidence tending to prove the alleged agreement, with reference to some, and not to all, claiming under that agreement. Inasmuch as the claim of estate of homestead of John A. Knight is coëxtensive with the claim of estate in his wife, it is impossible that his evidence in favor of his wife shall not equally be evidence in his own favor. His interest, if it be admitted that he has no other estate than that of homestead, still exists in the property to that extent; and it is not separate and independent from her estate, but, on the contrary, results from or grows out of it, so that if her estate fails, his must fail also. But if he has an interest or claim in the property separate and apart from this, that only increases his interest in the litigation, and renders it still more certain that he is incompetent.

The rehearing is denied.        *Rehearing denied.*