## DANIEL R. BRANT ET AL.

### v.

## BENJAMIN P. HUTCHINSON ET AL.

*Mortgages—Foreclosure—Liens—Pleading.*

1.   The allegations and proofs in a given case must correspond, and a party will not be entitled to relief although the evidence may establish a clear case in his favor, unless there are averments in the bill to support the case made by the evidence.

2.   A deed of trust and the notes accompanying it, the same being given as security for what might become due under a certain contract, amount in legal effect to a mortgage to secure future advances, and as against the parties giving the same, the party to whom they were given may recover thereon whatever may be finally due upon such contract, and no more.

3.   In an action to foreclose the deed in such case, the proceedings should not be based upon such deed as though it were given for a real debt; a party is simply entitled to the measure of relief shown to be due him, upon a true statement of his case.

4.   In such case such party should bring suit in his own name or he may join the trustee therein with him, as a co-complainant, or make him a defendant, at his election.

5.   This court holds that a party named should not be required to wait until the litigation growing out of the complications in which he had no part is brought to a close, before recovering under his mortgage.

[Opinion filed June 8, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. G. W. & J. T. KRETZINGER, for appellants Brant.

Mr. W. P. BLACK, for appellants Baker.

Messrs. HANECY & MERRICK, for appellees Noonan, Courtney and Singer.

GARY, J.   November 30, 1888, Hutchinson filed a bill to foreclose a mortgage, executed by Brant and wife to him, upon real estate in Chicago, upon which was then due $14,000 and some interest.

Brant and wife sold the premises, subject to the Hutchinson mortgage, to Baker and his wife for $81,000, $70,000 of which was secured by a mortgage executed by Baker and wife.

The deed of conveyance and the mortgage were dated May 1, 1888, the deed recorded June 18, 1888, and the mortgage November 30, 1888. The reason for delaying the recording of the mortgage was that the security to be given by the Bakers to the appellee Courtney, might have priority.

The appellants Thomas B. Baker and Sophronia Baker, bought the premises as a location for a theatre.

With the concurrence of Brant, they made a contract dated June 15, 1888, with the appellee Thomas E. Courtney, he being the party of the first part, and they of the second, as therein mentioned, of which the parts material for the present purpose are as follows:

"Witnesseth, that whereas the said party of the first part, in consideration of the covenants and agreements to be kept and performed by the said parties of the second part, their, and each of their, respective heirs, executors, administrators and assigns, has covenanted and agreed and by these presents does hereby covenant and agree for himself and his heirs, executors and administrators or assigns, to build, erect and complete, in a substantial and workmanlike manner, according to the plans and specifications drawn by M. F. McCarthy, a copy of said plans and specifications being hereto annexed and made a part of this agreement, one certain building, the front portion of which is to be six (6) stories and basement in height, the first floor to be used as stores and the upper portion as a hotel, and the rear portion of said building to be used as a theatre.

"Said party of the first part hereby agrees for himself and his heirs, executors, administrators or assigns, to excavate the ground and to erect and complete the said building according to the plans and specifications aforesaid, and to have the portion of said building which is to be used as a theatre, the basement, store floor, and the entrance to said theatre in the front portion of said building completed and ready for

use and occupancy on or before the fifth (5th) day of November, A. D. 1888, and the remaining portion of the building to be used as a hotel, to be finished and ready for occupancy on or before the first (1st) day of December, A. D. 1888, provided, however, that in case any delay shall arise from fire, tempest, frost or other inevitable cause, or from any building strike, or strike in the building trade, then such further time shall be allowed for the completion thereof as is reasonably necessary therefor.

" The erection of said building shall be under the direction and supervision of said architect, M. F. McCarthy, and in accordance with such explanations and directions as he may from time to time give for the purpose of such work. The said first party or his foreman shall always be at the building during the usual working hours.

"The said party of the first part hereby agrees to sublet the contracts for the various portions of the labor and material with which the said building is to be erected, to the lowest responsible bidder, reserving to himself the privilege of rejecting any particular bid, providing he can obtain another responsible bid equally as low.

" And the said party of the first part hereby agrees to keep an accurate and correct account of all his expenditures for labor and material for said building, and to exhibit to the said parties of the second part from time to time, as may be required, vouchers for each payment for labor, material and other expenses incurred in the erection of such building, and upon the full completion thereof, and settlement therefor between the parties hereto, to deliver to said second parties all such vouchers and receipted bills.

" And the said parties of the second part hereby agree, for themselves and their, and each of their, respective heirs, executors, administrators and assigns, to pay to the said party of the first part, or his legal representatives, the amount expended by him for such labor and materials and other expenses in or about the erection and completion of said building, and in addition thereto as compensation for his services twelve and one-half (12½) per cent upon the cost of said building.

"And the said parties of the second part covenant and agree with the said party of the first part, to pay him on or before the fifth (5th) day of November, A. D. 1888, the said cost of said building up to that time, together with the said compensation of twelve and one-half (12½) per cent thereon, and upon the full completion of said building (except the portion hereinafter agreed to be made by the said parties of the second part) they shall pay to the said party of the first part, in full, for all his expenditures and services in and about the erection of said building.

"And it is further covenanted and agreed by and between the parties hereto, that the cost of said building as estimated will be about eighty-five thousand dollars ($85,000), and to secure the said party of the first part, his heirs, executors, administrators and assigns, for any payments and expense by him made and sustained in the performance of this agreement, as well as his compensation, said parties of the second part have this day given their promissory note for said sum of eighty-five thousand dollars ($85,000), payable on or before the fifth (5th) day of November, A. D. 1888, to the order of Thomas E. Courtney (said party of the first part), at the Commercial National Bank of Chicago, Illinois, with interest at eight (8) per cent per annum after maturity, secured by trust deed upon said premises and building aforesaid, which premises are described as follows:

"Lots 19, 20 and 21, in block 1, of William Jones' addition to Chicago, in the S. W. ¼ of Section 22, T. 39 N., R. 14 E. 3d P. M., in Cook County, Illinois.

"But it is further mutually understood that said parties of the second part are to raise a considerable portion of the money to make said improvements, by a loan to be secured upon said premises, and the said party of the first part agrees that upon the negotiation of such loan, for such amount as may be mutually agreed upon, he will release his said trust deed and become entitled to the funds to be raised by such loan, to the extent of the cost of said building and his compensation, after paying an existing incumbrance upon the said premises of about fourteen thousand dollars ($14,000).

. " And should the funds raised by said loan, together with such moneys as may be otherwise raised and paid by said parties of the second part, be sufficient to satisfy said incumbrance of about fourteen thousand dollars ($14,000), and the cost of said building and said compensation, then the remainder of said loan to the extent of eleven thousand dollars ($11,000) shall be paid to Daniel R. Brant, which sum of eleven thousand dollars ($11,000) added to the aforesaid eighty-five thousand dollars ($85,000) make the note, given by said parties of the second part, to the said party of the first part, of the sum of ninety-six thousand dollars ($96,000) in all.

" If said party of the first part shall find that any bid on the mason work of said building shall be higher than he, with his own men, can do the said work with profit, he is required to do the same himself.

" The said parties of the second part hereby agree to furnish at their own cost and expense and without any claim or lien against said premises or building, all the labor and material for the completion and erection of the stage fixtures, scenery, curtains, flats, wings, ropes, pulleys, and appurtenances thereto, and also the furniture, drapery, carpets, etc., to be used in or about the proscenium boxes, aisles, foyer, dressing rooms, and all other places of said theatre, and also the gas fixtures and chandeliers in said hotel and theatre and stores."

Appellee Edward T. Noonan was the trustee in the trust deed mentioned in the foregoing contract.

The cost of the building far exceeded the estimate, and November 1, 1888, another note for $25,000, due December 10, 1888, secured by a like trust deed, was executed by the Bakers to Courtney.

On these trust deeds Noonan, in his own name, making Courtney a defendant, filed a cross-bill to foreclose. Multitudes of mechanics and material men, made defendants to bill and cross-bills, put in their claims for liens. Brant and wife answered, setting up their $11;000 debt, and asking that they be paid next after Hutchinson.

The court made no finding as to the Brants or the claimants under the lien law, but found that there was due to

Hutchinson $16,528, and to Noonan $137,072.14, and August 12, 1890, entered a decree that unless those sums were paid to Hutchinson and Noonan, respectively, within ten days, the premises should be sold.

No complaint is made of that part of the decree relating to Hutchinson, and as it is clear that the value of the land at the time contracts were made for the building, was greatly in excess of the amount due him, so that no inquiry as to respective values of land and improvements, under Sec. 17 of the statute, "Liens," will be necessary, that part of the decree is affirmed. Hutchinson should not be required to wait for his money until a protracted litigation, growing out of complications in which he had no part, is brought to a close.

Noonan has no beneficial interest; he is a mere trustee, with no right to receive any money. Whatever right Courtney has, he should prosecute in his own name, though he might join Noonan with him as a co-complainant, or make him a defendant, at his election. If this were the only objection to the decree in favor of Noonan, it might be passed by on the authority of Irish v. Sharp, 89 Ill. 261, as Courtney is a party to the suit, and would be bound by the decree. Thompson v. Morris, 57 Ill. 333; Topping v. Brown, 63 Ill. 348; Clubb v. Wise, 64 Ill. 157; Dyer v. Hopkins, 112 Ill. 168. But the deeds of trust and the notes accompanying them were but security to Courtney for what might become due to him under his contract with the Bakers. In legal effect they were mortgages to secure future advances. Courtney is entitled, as against the Bakers at least, to recover upon them what may be due to him from them under their contract, and no more. Dart v. McAdam, 27 Barb. 187; McDowell v. Fisher, 25 N. J. Eq. 93.

As the record shows that the Brants consented to both these trust deeds having priority of their mortgage, whatever Courtney is entitled to is to be paid before they are.

On the hearing below there was no attempt to show the exact cost of the building. Courtney loosely testified that he had advanced $17,500 or $17,600, or something of that kind, when first called, and later that he had paid out for

material and labor $17,496.73 but with no details. He also testified that the aggregate of all the contracts (by which we understand the work done by himself, and the prices in sub-contracts) was $156,334.39, besides extra work not valued in his testimony. The decree was for the amount of the notes and interest, upon the assumption, apparently, that the cost of the building must have exceeded that sum, but yet permitted it to be paid to Noonan, who had no interest in it, and who is not an officer of the court, nor under any bonds to account for it. Probably that payment was thought to be so improbable that little attention was paid to that part of the decree.

The decree directs that the master hold the proceeds of sale to abide further order, and reserves all questions as to mechanics' liens, and says nothing in regard to the Brants. That might be construed as in effect a declaration that the Brants could in no event be entitled to anything, though they are entitled to come in next after Courtney and the mechanics and material-men. But on the pleadings as they stand, Courtney can have no relief.

The security he has taken, though in form a real debt, is not so in fact, and he must set out in his pleadings the real case upon which he is entitled to the aid of a court of equity.

This results from the "well settled principle that the allegations and proofs must correspond, and that a party will not be entitled to relief, although the evidence may establish a clear case in his favor, unless there are averments in the bill to support the case made by the evidence." Morgan v. Smith, 11 Ill. 194.

The cross-bill of Noonan seeks a foreclosure of the trust deeds as securities for debt owing to Courtney by the Bakers, evidenced by their notes; the proof shows that they were not given as any evidence of present indebtedness, and that Courtney's rights are not measured by the amounts specified in the notes, but by what he is entitled to under the contract, not exceeding those amounts and interest. He may by joining Noonan as complainant, or making him a defendant, file a cross-bill for the relief he may be entitled to on a true statement of his case.

On the present record it is impossible to determine the respective rights of the several parties subordinate to Hutchinson, further than that the Brants must come in after Courtney and the mechanics' liens for work and material done and furnished before the Bakers assigned, November 30, 1888.

Compensation for the work done on the building thereafter, under the authority of the County Court, must be sought under the insolvent proceedings, and not in this case.

It is argued at great length that Courtney has so failed to perform his contract as to be entitled to no compensation. On this appeal it is not necessary to go at length into that question, but it must be a strong case against a party doing work and expending money and incurring liabilities to a very large amount, under such circumstances as appear here, that would justify a denial of all compensation.

The decree as to Noonan is reversed and the case remanded for further proceedings not inconsistent with this opinion.

The costs here to be paid by Courtney.

*Reversed and remanded.*